ACCEPTED
07-14-00314-CR
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
4/17/2015 10:43:47 AM
Vivian Long, Clerk

NO. 07-14-00314-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS AT AMARILLO

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
4/17/2015 10:43:47 AM
VIVIAN LONG
CLERK

*Rachel Johnson*

**Appellant,**

v.

*THE STATE OF TEXAS,*

**Appellee,**

**On Appeal from Cause No. 2013-438,766**

**In the 137th District Court**

**Lubbock County, Texas**

**BRIEF OF APPELLANT, RACHEL JOHNSON**

Respectfully submitted,

Joel Cook
State Bar No. 24044289
Attorney at Law
810 Main Street
Lubbock, Texas 79401
(806) 747-3825 (tel.)
(806) 747-3851 (fax)

ATTORNEY FOR
APPELLANT
RACHEL JOHNSON

APRIL 17, 2015

**ORAL ARGUMENTS NOT REQUESTED**

NO. 07-14-00314-CR

IN THE COURT OF APPEALS
FOR THE SEVENTH DISTRICT OF TEXAS AT AMARILLO

*Rachel Johnson*

**Appellant,**

**v.**

*THE STATE OF TEXAS,*

**Appellee,**

**On Appeal from Cause No. 2013-438,766**

**In the 137th District Court**

**Lubbock County, Texas**

**BRIEF OF APPELLANT, RACHEL JOHNSON**

TO THE HONORABLE JUDGES OF THE COURT OF APPEALS:

In accordance with rule 38.1 of the Texas Rules of Appellate Procedure, Appellant Rachel Johnson, files her Appellant's Brief.

## IDENTITY OF PARTIES AND COUNSEL

1.      Trial counsel for the defendant were Robin Matthews, State Bar No. 24029711, 1703 Ave. K, Lubbock, TX 79401, (806) 763-0409 and James M. Moore, State Bar No. 24065783, 5147 69th Street, Suite D Lubbock, Texas 79424 Phone: (806) 747-7373, Fax: (806) 747-6031 and Philip A. Wischkaemper, Lubbock Private Defender's, Office State Bar No. 21802750, 1504 Main Street Lubbock, Texas 79401, Phone: (806)749-0007, Fax: (806) 749-0009.  Appellate counsel for Appellant is Joel Cook, State Bar No. 24044289, Law Offices of Wm. Everett Seymore, 810 Main Street Lubbock, Texas 79401(806) 747-3825 (telephone), (806) 747-3851 (facsimile).

2.      Trial counsel for the State were Jaret Greaser Assistant Criminal District Attorney SBOT No. 24045974 and Matt Morrow Assistant Criminal District Attorney SBOT No. 24081053 Lubbock County Courthouse, 2nd Floor P.O. Box 10536 Lubbock, Texas 79408-3536, Phone: (806) 775-1100 Fax: (806) 775-7930.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL…………………………………..iii

TABLE OF CONTENTS………………………………………………..iv

INDEX OF AUTHORITIES……………………………………………...v

STATEMENT OF THE CASE…………………………………………….1

ISSUES PRESENTED…………………………………………………...2

STATEMENT OF FACTS…..……………………………………...…..2

SUMMARY OF THE ARGUMENT...………………………………………..3

STANDARD OF REVIEW……………………………………………….4

ARGUMENT…………………………………………………………...5

    I.    The sentence of the trial court violates the state and federal constitutional prohibition on cruel and unusual punishment.

CONCLUSION……………………………………………….…..9

PRAYER……………………………………………….………...10

CERTIFICATE OF SERVICE ……………………………………….…...11

CERTIFICATE OF COMPLIANCE ……………………………….….…...11

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Harmelin v. Michigan,*

> 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)…….3,4,6

*Johnson v. State,*

> 864 S.W.2d 708 (Tex.App.-Dallas 1993) (en banc), *aff'd,* 912 S.W.2d 227 (Tex.Crim.App.1995)……………………………..…..3

*Lackey v. State,*

> 881 S.W.2d 418 (Tex.App.-Dallas 1994, writ ref'd)…...……..3,4

*McGruder v. Puckett,*

> 954 F.2d 313 (5th Cir.1992)…………………………………..4

*Samuel v. State,*

> 477 S.W.2d 611 (Tex.Crim.App.1972)………………………3

*Solem v. Helm,*

> 463 U.S. 277 103 S.Ct. 3001 (1983)…………………………..3,4,5,6

**STATUTES:**

TEX. PEN.CODE ANN. § 29.02………………………………….....…..…….....1

TEX. PEN.CODE ANN. § 29.03……………………………….…..….………….1

TEX.CODE CRIM.PROC.ANN. Art. 42.12(3)………………………………..8

**SECONDARY SOURCES:**

Kevin M. Beavers et al., The Nurture Versus Biosocial Debate in Criminology: On The Origins Of Criminal Behavior And Criminality, 377-78 (2014)…………....….…….7


Lindsay M. Howden & Julie A. Meyer, *Age and Sex Composition: 2010* (May 2011), http://www.census.gov/prod/cen2010/briefs/c2010br-03.pdf…………………….…..8

## STATEMENT OF THE CASE

Appellant, Rachel Johnson ("Rachel") was charged by indictment with a single count of Aggravated Robbery.[1] After a bench trial, she was convicted of the lesser-included offense of Robbery.[2] On July 21, 2014, the trial court sentenced her to six years in the Texas Department of Corrections-Institutional Division.[3] Rachel filed a Motion for New Trial, alleging that the outcome of the case was "contrary to the law and the evidence," and a Notice of Appeal on July 28, 2014.[4] The trial court certified her right to appeal on August 1, 2014.[5]

---

[1] CR.7. (The Clerk's Record will be cited to as "CR" followed by the page number, and the Reporter's Record will be cited to as "RR" followed by the volume and page number).

[2] CR.68. (Robbery is a 2nd degree felony carrying a punishment range of 2-20 years while the charge of Aggravated Robbery is a first degree felony with a punishment range of 5-99 years to life). TEX. PEN.CODE ANN. §§ 29.02-3 (Vernon Supp.2012).

[3] *Id.*

[4] *Id.* at 62-66.

[5] *Id.* at 67.

## ISSUES PRESENTED

Did the trial court's sentence of six years of confinement in TDCJ-ID constitute cruel and unusual punishment?

## STATEMENT OF FACTS

Rachel was eligible for probation.[6]  Her only prior conviction was for a misdemeanor deferred adjudication.[7]  The trial court convicted her of the lesser included offense of Robbery.[8]  The testimony of the responding officer indicated that Rachel looked "…not very comfortable…" holding the pellet gun during the robbery.[9]  During testimony of the victim, Rachel apologized in open court for her actions.[10]  There was testimony from the probation office that she would be a good candidate for probation.[11]

---

[6] CR. 49-50.

[7] RR.VI.6.

[8] CR.68

[9] RR.III.23.

[10] RR.III.195.

[11] RR.V.126; 131 (checked in regularly); RR.V.132 (no positive drug tests while on pre-trial release); RR.VI.111.

2

## SUMMARY OF THE ARGUMENT

The trial court's decision to sentence Rachel to six years in the penitentiary was cruel and unusual punishment when she was eligible for probation and her criminal history was comprised of one prior misdemeanor deferred adjudication. The Supreme Court has held that there is a narrowly applied "proportionality rule" that can be applied to punishments that are grossly disproportional to the underlying criminal activity giving rise to the sentence. While the Supreme Court has applied the three-factor test laid out in *Solem* in the past in assessing disproportionate sentences, recent decisions indicate that the standard used to resolve these types of cases may not require strict adherence to that test. It would seem that the harshness of the sentence when compared to the gravity of the conduct may be sufficient to warrant a reversal of a particular sentence without inquiry into the remaining *Solem* factors. We would ask this Court to consider that Rachel's sentence in this case is grossly disproportionate to the gravity of her offense and that this factor alone supports a finding that her sentence is cruel and unusual.

**STANDARD OF REVIEW**

Texas courts have held that a punishment is not cruel and unusual if it is within the range authorized by statute.[12] However, at least one Texas court has concluded that sentences are reviewed to determine whether the sentence imposed is grossly disproportionate to the crime.[13] The Eighth Amendment requires that the punishment assessed must be proportionate to the crime.[14] The *Solem* court set out three factors a reviewing court should consider when determining whether an assessed sentence is disproportionate to the offense (1) the offense's gravity and the penalty's harshness, (2) the sentences imposed on others in the same jurisdiction for this offense, and (3) the sentences imposed for the same offense in other jurisdictions.[15] A majority of the *Harmelin* court voted to affirm Harmelin's sentence, but only four justices supported the continued application of all three *Solem* factors.[16]

---

[12] *Johnson v. State,* 864 S.W.2d 708, 725 (Tex.App.-Dallas 1993) (en banc), *aff'd,* 912 S.W.2d 227 (Tex.Crim.App.1995); *Samuel v. State,* 477 S.W.2d 611, 614 (Tex.Crim.App.1972).

[13] *Lackey v. State,* 881 S.W.2d 418, 421 (Tex.App.-Dallas 1994, writ ref'd) (adopting the Fifth Circuit's interpretation of *Solem* and *Harmelin* in *McGruder,* 954 F.2d at 316).

[14] *Solem v. Helm,* 463 U.S. 277, 289-90, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *but see Harmelin v. Michigan,* 501 U.S. 957, 991-93, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (Scalia, J., plurality op.).

[15] *Solem,* 463 U.S. at 292.

[16] *See McGruder v. Puckett,* 954 F.2d 313, 316 (5th Cir.1992).

Under this standard of review, this Court should initially compare the gravity of appellant's offense against the severity of the sentence. Only if the Court finds that the punishment is grossly disproportionate to the offense should it then consider the remaining *Solem* factors.[17] The Eighth Amendment does not require strict proportionality between crime and sentence, but rather forbids only extreme sentences that are grossly disproportionate to the crime.[18]

## ARGUMENT

Rachel was sentenced to six years of confinement for robbing someone with a pellet gun for a few hundred dollars.[19] Rachel is a forty-four year old single mother of eight children. She is physically well beyond her "prime" in terms of potential criminal activity. She is eligible for probation and only has one "prior conviction," being a misdemeanor deferred adjudication. Lastly, the probation department, which is tasked with supervising probationers and making certain findings to the trial court regarding sentencing, indicated to the judge prior to sentencing that Rachel would be a good candidate for probation. Based on these factors, she should

[17] *See Lackey,* 881 S.W.2d at 421.

[18] *Harmelin*, 501 U.S. 957, 959, 111 S.Ct. 2680, 2683

[19] RR.III.193.

5

have been given probation because the ordered punishment is grossly disproportionate to her crime.

In *Solem*, the defendant was sentenced to life without parole for issuing a "no account" check for $100.[20] He was sentenced under South Dakota's recidivist statute based on prior felony convictions.[21] After reviewing prior decisions and the meaning and intent of the 8th Amendment, the Supreme Court found that the sentence was grossly disproportionate to the offense and reversed the trial court's sentence.[22]

In coming to that conclusion, the court initially looked at the offense in comparison to the sentence, but also looked at other sentences imposed on criminals in the same jurisdiction and the sentences imposed for the same crime in other jurisdictions.[23] This came to be known as the *Solem* test. However, in *Harmelin*, the court would revisit its 8th Amendment jurisprudence and held that the three factor test is not always required:

> "*Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. The Court stated that "it

[20] *Solem,* 463 U.S. at 281.

[21] *Id.*

[22] *Id*. at 303.

[23] *Id*. at 291-92.

*may* be helpful to compare sentences imposed on other criminals in the same jurisdiction," and that "courts *may* find it useful to compare the sentences imposed for commission of the same crime in other jurisdictions." However, it did not make such inquiries mandatory.[24]

It would seem that if this Court finds that the sentence is grossly disproportionate as a threshold matter, than it could, but does not necessarily have to, consider the other *Solem* factors. In fact, *Solem* stated that in determining unconstitutional disproportionality, "no one factor will be dispositive in a given case" and that ("[N]o single criterion can identify when a sentence is so grossly disproportionate that it violates the Eighth Amendment".[25]

The Supreme Court has held that there must be "some" proportionality between a crime and its punishment, and that grossly disproportionate sentences will be found unconstitutional. The question this Court must first answer is whether the gravity of Rachel's action justifies the severity of the punishment. Solem's crime dealt with a very low dollar amount, but he was essentially sentenced for his extremely long criminal history. Here, Rachel's crime dealt with a similarly small monetary amount and her actions, while

---

[24] *Harmelin*, 501 U.S. 1004-5, quoting *Solem, supra,* 463 U.S. at 291-92 (emphasis added).

[25] *Solem,* 463 U.S. 291, n. 17.

7

callous and indifferent to the well-being of her victim, do not support six years of incarceration.

Research indicates that Rachel is unlikely to commit any other crime in the future, let alone another robbery.[26]  Scientists have noted a direct link between age and criminal activity and found that "[a]ge is a consistent predictor of crime, both in the aggregate and for individuals. The most common finding across countries, groups, and historical periods shows that crime—especially "ordinary" or "street" crime—tends to be a young person's activity."[27]  Young being a relative term, but typically defined as under the age of 25.[28]  Rachel is rapidly approaching middle age, if not already within that demographic.  While there are various definitions of what defines middle age, The US census bureau defines it as 45-64.[29]  This indicates that Rachel is rapidly declining in terms of future dangerousness and likelihood to re-offend and that her crime in this case was most likely an isolated incident, unlikely to be repeated.

---

[26] Kevin M. Beavers et al., *The Nurture Versus Biosocial Debate in Criminology: On The Origins Of Criminal Behavior And Criminality*, 377-78 (2014).

[27] *Id*. at 393.

[28] *Id*. at 377.

[29] Lindsay M. Howden & Julie A. Meyer, *Age and Sex Composition: 2010* (May 2011), http://www.census.gov/prod/cen2010/briefs/c2010br-03.pdf.

Rachel was eligible for probation.[30]  She had no been prior felony conviction and received a sentence under 10 years for the instant offense. Furthermore, her only "prior" was a misdemeanor deferred adjudication from 2004, that was ultimately completed.[31]  There was circumstantial evidence offered throughout the case, and direct testimony from the probation department, that Rachel would indeed be a good candidate for probation.  Rachel had no pre-trial bond issues and no positive drug tests while awaiting her trial.  Being middle-aged, with no prior felony convictions, and the ability for success on probation casts doubt on the trial court's decision to incarcerate Rachel, and calls into question the proportionality of that decision in light of her crime.

## CONCLUSION

Typically, if the Court determines that the sentence is disproportionate to the crime, then it moves to the other *Solem* factors, but after *Harmelin* the remaining factors may, or may not be, continuing points of inquiry for the Court to consider when determining the overall constitutionality of a

---

[30] *See* TEX.CODE CRIM.PROC.ANN. Art. 42.12(3).

[31] RR.V.7; RR.VI.6.

9

sentence. In that light, We would ask this Court to consider that six years in the penitentiary is grossly disproportionate to Rachel's actions and that this factor, standing alone, is sufficient to make her sentence cruel and unusual.

**PRAYER**

We respectfully request this Court to reverse the decision of the trial court in respect to the punishment given to Rachel, and remand the case for a new sentencing hearing consistent with the arguments and authorities cited herein.

Respectfully submitted,

Joel Cook
State Bar No. 24044289
Attorney at Law
810 Main Street
Lubbock, Texas 79401
(806) 747-3825 (tel.)
(806) 747-3851 (fax)
joel_cook@outlook.com

/s/ Joel Cook
Joel Cook, Attorney for the
Appellant

**CERTIFICATE OF SERVICE**

10

I certify that on April 17, 2014, a true, correct, and complete copy of this Appellant's Brief was delivered to counsel for the State.

/s/ Joel Cook
JOEL COOK

## CERTIFICATE OF COMPLIANCE

This is to certify that this document is in compliance with the word limit set in Rule 9.4.(i)(2)(B) as determined by Rule 9.4.(i)(2) and is hereby acknowledged in this Certificate in accordance with the Texas Rules of Appellate Procedure 9.4.(i)(3). This document contains 1651 words.

/s/ Joel Cook
JOEL COOK